Chancellor Johnston
delivered the opinion of the Court.
The leading questions propounded in this appeal, and those alone on which the Court think it necessary to express any opinion, are:—
1. Whether a female infant is bound by marriage articles, by which her own estate is settled to the use of the marriage ?
2. If not, whether any other than herself, or her legal representatives, can avoid it ?
They arise out of marriage articles entered into between the Rev. Hugh Frazer and Elizabeth Clegg Porter, in 1T96, the said Elizabeth then being about sixteen years of age; whereby a plantation called Clegg’s Point, of which she was then seized, is conveyed to trustees to the use, in the event which has happened, of the intended husband for life, remainder to all and singular the children of the marriage, 'and' to “the lawful issue of any such children as may happen to be dead, equally and impartially to be divided between and among them,” &c. The marriage contemplated was accordingly had and solemnized, and the only issue of the marriage was a son, Benjamin Porter Frazer. Elizabeth, the tvife, died in 1191, being then under the age of twenty-one years. Benjamin, the son, died in 1829, being then upwards of thirty-two years of age, leaving two children, parties defendants in this suit. The Rev. Hugh Frazer, the husband, is still alive, and also a party defendant, the administrator of Benjamin, the son. The plaintiff claims as a creditor *411 of Benjamin, the son, who died otherwise insolvent; and in support of the bill it is insisted that the marriage articles are void, Elizabeth the wife being an infant at the time of their execution; consequently on her death, two-thirds of Clegg’s Point descended to the son Benjamin, and are assets for the payment of his debts. It may be proper also to premise that at the time of the marriage, the wife Elizabeth was, in addition to Clegg’s Point, seized of other real estate, and possessed of a number of slaves, all of which was by the terms of the articles secured to the joint use of husband and wife during their joint Hives, remainder r*ggg to the survivor, and on the death of the survivor, remainder to L the children &c., as before stated ; and that nothing like fraud in obtaining the marriage articles has been charged or pretended. So that the questions propounded are unmixed questions of law.
The question whether a female infant is, or is not bound by a marriage settlement which disposes of her own real estate, is one of much interest, and about which there has been great diversity of opinion amongst the most learned lawyers and judges of the English Courts. It is one of the first impression here, and as it is not indispensable to the satisfactory determination of the case before us, I propose only to offer some general views of it, more with a view to call the attention of the profession to it, than to express any settled opinion of my own. '
In Drury v. Drury, 2 Eden, 39, the question was, whether an infant wife, who had been jointured, was, or was not barred of dower in the lands of her husband under the statute of 27 Hen. 8th ; and on discussing that case, the Court went very fully into the general question, whether a female infant was or was not bound by a marriage settlement disposing of her real estate ? Lord Northington, who tried the cause, held that she was not bound, either by the statute, or by the rules of the common law, and that she might elect to take either the jointure or dower. He insists that the policy of the common law, which avoids the contracts of infants in other matters, extends also to marriage settlements of real estates by female infants. That as an incident to' marriage, the law had endowed the wife in the lands of her husband, and conferred on the husband all the chattels of the wife, regarding each as an equivalent for the other : thus superseding the necessity of any contract between the husband and wife in relation to their estates. The judgment was however reversed, on an appeal to the House of Lords, with the concurrence of a majority of the judges, amongst whom were Lord Hardwicke, Lord Mansfield, and Wilmot, J. On that side of the question, it is maintained that although infants are not generally bound by their contracts, they are bound by such as are for their benefit, as for necessaries and the like.— That a female infant over twelve years is capable of entering into the contract of marriage, into the consideration of which, the settlement of her real estates enters very largely, and without which the marriage might never have been had, and as the marriage is ^indissoluble, r^Kga the settlement ought to be binding. See 2 Eden, 64-72, Wilmot’s *- Notes, 184. And in this opinion Mr. Atherly, in his treatise on Marriage Settlements, pp. 39, 40, after a full review of the authorities, concurs, regarding the direct question as not then entirely settled. It came up again incidentally in Durnford v. Lane, 1 Bro. C. C., 106, when Lord Thurlow expressed himself favorably towards the judgment of *412 Lord Northington, in Drury v. Drury, and in Milner v. Harewood, 18 Ves. 275, which was tried in 1811. Without entering into the argument, or reviewing the cases, Lord Eldon concurred in that opinion, and that seems to be regarded as decisive of the question there. — 2 Kent’s Com. 199.
If the matter be regarded as definitively settled there, it becomes a question how far we are bound by it. The Act of 1112, while incorporating the body of the English common law into our jurisprudence, renders it obligatory no further than it is applicable to our own condition and circumstances; and in applying the rules, we must take care that they do not violate some other fixed -rule growing out of our own peculiar habits and institutions. It would be unsafe, therefore, implicitly to follow the English Courts, without inquiring whether, under the circumstances existing here, a different rule would not have obtained there.
Without adverting to the causes, which must be obvious to every one who has considered the subject, it is well ascertained that our females marry at a much earlier age than even in England; indeed the instances in which females do not marry before the age of twenty-one years, may be accounted rare. The policy of throwing no difficulties in the way, or rather of encouraging them, is peculiarly applicable to the sparse population, and the great facilities of obtaining subsistence ; and into whatever speculations the subject may lead, there can be no question that marriage settlements, especially amongst the richer classes, enters very largely into the contract of marriage, and that any restraint upon th.em would oppose an obstruction.
In England, whilst personalty is scarcely regarded at all, real estates are very highly estimated, and descend in the male line : the instances in which the wife brings with her real estate on marriage, are, therefore, rare ; and it might well be thought that it was unnecessary to break in upon a general rule, to provide for the few cases which might arise, espe*5401 cially as ^h© va^ue °f bbe rea,l *©state of the wife might be regarded J as more than an equivalent for any provision which the husband might be able to make for her. Here it is otherwise ; real estates descend equally to the males and females, and the value of slaves, which are regarded as chattels, and other personalty usually attached to a well-settled plantation, may be safely estimated at double the value of the realty, and in most cases the portion of the wife consists partly of both. There is also another diversity. In England, provision is usually made for the wife out of the fortune of the husband, in consideration of the portion which the wife brings. Here the object is generally to secure to the wife her own fortune, consisting of lands or negroes, or both. And if a female infant may bind herself by a settlement of her personalty, (and that she may is universally conceded,) to deny her the power of also disposing of her real estate, would be to frame a rule giving her the shadow, whilst the substance is taken from her. The slaves and the plantation are inseparable; one would be comparatively useless without the other, and the interest of the wife would seem to require, that she should be left to treat the matter without restraint. The watchfulness of parents, and the care of guardians and friends, would in general be a sufficient guard against rash and inconsiderate settlements on her part, and the Courts *413 of justice would always relieve against positive frauds in obtaining them.
There is another consideration. Instances of female infants settling their real estates on their marriage, must have very frequently happened, and the question whether they are bound by them, never has been before made. They have always been treated as valid, and the estates have passed under them. Public opinion appears to have settled down in favor of their validity, and to introduce a new order of things might disturb the repose of titles which have been acquired under them. The matter ought therefore to be well weighed before we venture upon it.
[*541 The remaining question is one of less difficulty. The question as to what contracts of an infant are absolutely void, or voidable only, is a very fit subject of a lecture or disputation, but I do not perceive that we should derive any advantage from treating of it so much at large here. It is already sufficiently ascertained that there is a class of contracts, (within which, I propose to show that this case falls,) which are considered as voidable only, and that the election to avoid or abide by them, is a personal privilege, of *which no other than the infant, or those claiming as legal representatives, can avail themselves.
Bingham, in his Treatise on Infancy, p. 33, lays down the rule that all the acts of an infant, capable of being legally ratified, are voidable only, and that such only are absolutely void as are incapable of being legally ratified; and on this principle it was held in Zouch v. Parsons, 3 Bur. 1194, that the conveyance of an infant by lease and release, was voidable only. But Chancellor Kent has, I think, shown very clearly that the rule is not a certain test, and after reviewing the authorities, concludes with Chief Justice Eyre, in Kean and Boycott, 2 H. Black. 511, that when the contract of an infant was obviously to the prejudice of the infant, it is void — when, for his benefit, as for necessaries and the like, it is good ; and when uncertain as to the benefit or prejudice of the infant, is voidable only at his election. 2 Kent Com. 192-3.
These rules apply obviously to executory contracts, and I cannot well suppose that it ever yet entered into the head of any one, who considered the subject, that the executed contract of an infant, where he had done all that was necessary to invest another according to the forms of law, with the title and possession of his estate, was absolutely void. Eor example: an infant makes an advantageous bargain in the sale of his estate, or he gives it away, and executes formal conveyances, and the purchaser or donee enters under it; himself and his legal representatives are well satisfied to acquiesce in it — can it be that a stranger would be permitted to enter on the purchaser with impunity, on the ground that he derived his title from an infant ? And yet this must be the effect, if the conveyance of the infant is absolutely void.
Atherly, in his treatise on Marriage Settlements, p. 43, has, in a note, referred to Perkins as authority for a rule, which appears to me to point at the principle. It is, “ That all gifts, grants, or deeds, made by infants, which do not take effect by the delivery of the hand are void, but all gifts, grants, or deeds, made by infants by matter in deed or writing, which do take effect by delivery of his hand, are voidable by himself, his heirs, and those who heir his estate.” That the infant, or his legal representative alone, are competent to avoid a voidable contract, is not, I *414 think, questioned anywhere. That doctrine is distinctly recognized by Lord Eldon in Milner v. Harewood, and in that all the authorities agree.
*5421 ®nS^and> lands pass only by livery of seisin, and it might -* *well be questioned whether the conveyance of an infant by deed, without livery, was void, or voidable only; but here the delivery of the deed is substituted for the livery of seisin, and invests the purchaser with the title.
Here, Elizabeth Clegg Porter, then an infant, in contemplation of marriage with Hugh Frazer, conveyed her estate to trustees for certain uses. She died during her infancy, her husband surviving, and supposing the conveyance to be voidable only, she was never competent, nor did she make an election, whether to be bound by it or not. Her only issue, Benjamin, lived to the age of thirty-two, eleven years after he attained full age, without calling the estate in question, or making his election. The descent is now cast on his infant children, who must of course elect to take under the settlement, as otherwise the estate would be assets to pay the debts of their father, The creditors of Benjamin, strangers to the blood of Elizabeth, very clearly have no right to interfere in the matter.
The plaintiff’s bill must therefore be dismissed, so far as it seeks to charge the settled estate; each party to pay their own costs.